UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTRAL BOAT RENTALS, INC. | CIVIL ACTION |
| VERSUS | NO. 20-1277 |
| SHAWN BROWN | SECTION "R" (4) |

## ORDER AND REASONS

Counterclaimant Shawn Brown moves to sever the question of maintenance and cure for expedited trial.[1] In the alternative, Brown moves to voluntarily dismiss his counterclaim without prejudice.[2] Central Boat Rentals, Inc. ("CBR") does not oppose Brown's motion to sever and expedite, but it does oppose Brown's alternative motion to dismiss.[3] For the following reasons, the Court denies Brown's motion to sever and expedite. The Court also denies Brown's motion to voluntarily dismiss his counterclaim.

## I.   BACKGROUND

Shawn Brown, a seaman, worked as a pilot for CBR aboard the M/V CAPTAIN RAPHAEL.[4] Brown alleges that on October 14, 2019, he injured

---

1   *See* R. Doc. 16.
2   *See id.*
3   *See* R. Doc. 19.
4   *See* R. Doc. 1 at 2, ¶ 6.

his neck, back, and arm, while operating the M/V CAPTAIN RAPHAEL's steering system.[5]

On December 12, 2019, Dr. John Davis, an orthopedic surgeon, examined Brown. Davis concluded that Brown's injury necessitated surgery.[6] Specifically, Davis recommended a "three level corpectomy involving the vertebral bodies of C4, C5[,] and C6 and a fibular strut fusion from C3 to C7 with an anterior cervical plating."[7] On February 7, 2020, Dr. Henry Eiserloh, another orthopedic surgeon, examined Brown. Eiserloh concluded that "nonsurgical treatment" was the appropriate course.[8] In addition, Eiserloh reviewed an MRI of Brown's spine from June 10, 2019, four months before the alleged injury, and noted that the MRI revealed "disk protrusion at C5-6 . . . compressing the anterior aspect of the cervical cord."[9]

On April 24, 2020, CBR filed a complaint in this Court, seeking a declaratory judgment that it does not owe maintenance and cure to Brown.[10] Relying on Eiserloh's opinion, CBR disputes whether Brown requires surgery.[11] Further, CBR alleges that Brown's injury pre-existed his

---

[5]   *See* R. Doc. at 6 at 2, ¶ 4.
[6]   R. Doc 16-4 at 2.
[7]   *Id.*
[8]   *See* R. Doc. 16-3 at 8.
[9]   *See id.* at 7.
[10]  *See* R. Doc. 1 at 4.
[11]  *See id.* at 3, ¶ 9.

2

employment with CBR, and it asserts that it has a defense under *McCorpen v. Central Gulf S. S. Corp.* 396 F.2d 547, 548 (5th Cir. 1968) ("Maintenance may be awarded by courts even where the seaman has suffered from an illness pre-existing his employment, but there is a general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner.").

On June 11, 2020, Brown answered and filed a counterclaim.[12] In his counterclaim, Brown seeks damages for CBR's failure to pay maintenance and cure, as well as damages under the Jones Act and the general maritime law doctrine of unseaworthiness.[13]

CBR answered Brown's counterclaim,[14] and Brown next filed this motion to sever and expedite trial on the maintenance and cure question or to dismiss his counterclaim without prejudice in the alternative.[15] After the parties filed all of the relevant briefing, the Court set jury trial for March 8, 2021[16]—approximately six months from now. The Court considers the parties' arguments below in light of its recent scheduling order.

---

12   *See* R. Doc. 6.
13   *See id.* at 2, ¶ 5.
14   *See* R. Doc. 11.
15   *See* R. Doc. 16-1 at 2.
16   *See* R. Doc. 25.

## II. DISCUSSION

### A. Sever and Expedite

When deciding whether to sever and expedite a maintenance and cure claim, courts consider several factors, including: (1) the plaintiff's interest in an expedited trial on the issues, (2) the proximity of the scheduled trial date, (3) whether the plaintiff has requested a jury trial, (4) whether the nonmoving party opposes the motion, (5) whether a delay in the plaintiff's surgery would render a determination of damages in a Jones Act case speculative and (6) whether the same experts would testify in both trials. *See, e.g., Cooper v. Nabors Offshore, Inc.*, No. 03-0344, 2003 WL 22174237, at *1 (E.D. La. Sept. 9, 2003); *Marine Drilling Management Co. v. Scott*, No. 02-1967, 2003 WL 133218, at *1 (E.D. La. Jan. 15, 2003); *Hampton v. Daybrook Fisheries, Inc.*, No. 01-1913, 2002 WL 1974107, at *2 (E.D. La. Aug. 27, 2002); *Carpentier v. Blue Streak Offshore, Inc.*, No. 96-323, 1996 WL 383126, at *1-*2 (E.D. La. July 3, 1996).

The Court need not consider all of the above factors. *See Hampton*, 2002 WL 1974107, at *2; *Martinez v. Edison Chouest Offshore, Inc.*, No. 00-2930, 2001 WL 6726, at *1 (E.D. La. Jan. 2001). But in all events, the Court must aim for a result that promotes judicial economy. *See, e.g, Grundstrom v. 4-J's Enterprise, Inc.*, No. 03-2657, 2004 WL 551207, at *2 (E.D. La. Mar.

4

2004); *Marine Drilling*, 2003 WL 133218, at *1; *Hampton*, 2002 WL 1974107, at *2.

The first two factors—Brown's interest in an expedited trial and the proximity of the scheduled trial date—weigh against severance. This Court's decision in *Grundstrom* is instructive. There, the Court reasoned that because jury trial was scheduled in six months, and because the parties had yet to conduct substantial discovery, "[a]n expedited trial . . . would not materially accelerate the adjudication of plaintiff's claims." *See also Marine Drilling*, 2003 WL 133218, at *1 (denying a motion to expedite when trial was five months away). As was the case in *Grundstrom*, the parties here will try all pending matters before a jury in six months, and considerable time remains before discovery closes.[17] Consequently, the Court finds that Brown's interest is not well-served by severing the maintenance and cure issue.

The fifth factor—whether a delay in the plaintiff's surgery would render a determination of damages in a Jones Act case speculative—also weighs against severance. The parties have not shown a range of possible outcomes from the surgery that would make a determination of damages speculative. *See Baucom v. Sisco Stevedoring, LLC*, 560 F. Supp. 2d 1181, 1205 (S.D. Ala.

---

[17]     *See id.* at 6 (closing discovery on January 26, 2021).

5

2008) (reasoning that damages are speculative when there are a broad range of possible outcomes from suggested surgery). Nor have they shown that a six-month delay would affect the outcome of Brown's operation. *See Grundstrom*, 2004 WL 551207, at *2 (declining to sever and expedite trial because a six-month delay in surgery would "not likely to materially change the outcome of any surgery"); *Marine Drilling*, 2003 WL 133218, at *1 (finding that "it is unlikely that a delay of five more months [would] alter the outcome of any surgery" and declining to sever and expedite trial); *Hampton*, 2002 WL 1974107, at *2 (declining to sever and expedite trial, reasoning that "a delay of three more months is unlikely to change materially the outcome of any surgery"). Moreover, eleven months have passed since Brown's alleged injury. When a substantial period of time has passed since the injury, courts are less likely to find that additional delay would alter the outcome of any surgery. *See Marine Drilling*, 2003 WL 133218, at *1. Given these considerations, the Court finds that an additional six-month delay will not render the damages determination speculative.

Finally, the sixth factor likewise weighs against severance; the same physicians are likely to testify at both trials. *See Marine Drilling*, 2003 WL 133218, at *1; *Hampton*, 2002 WL 1974107, at *2. It would be inefficient to have each expert testify twice in this matter. Taking all of the above

6

considerations into account, the Court finds that efficiency and judicial economy dictate that Brown's motion be denied.

### B. Dismiss Counterclaim Without Prejudice

The Court next considers Brown's alternative proposal—that his counterclaim be dismissed without prejudice under Federal Rule of Civil Procedure 41(c). *See* Fed. R. Civ. P. 41(c) (providing that Rule 41(a)(2) governs voluntary dismissal of counterclaims). Rule 41(a)(2) provides: "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on the terms that the court considers proper." A decision to grant a dismissal lies within the sound discretion of the district court. *Davis v. Huskipower Outdoor Equipment*, 936 F.2d 193, 199 (5th Cir. 1991). "If a dismissal would unfairly prejudice the defendant, then the plaintiff's motion to dismiss should be denied." *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985).

The Court declines to dismiss Brown's counterclaim. His counterclaim is for wrongful refusal to pay maintenance and cure and for Jones Act damages.[18] The Court finds that voluntary dismissal of Brown's claims would be judicially inefficient and would cause prejudice to CBR. *See Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985) (reasoning that defendants are

---

[18] *See* R. Doc. 2-3, ¶¶ 5-6.

prejudiced by unnecessary litigation expenses). Moreover, Brown's claim that CBR wrongfully refused to pay maintenance and cure is inextricably intertwined with the issues in the declaratory judgment action and may well be a compulsory counterclaim. *See* Fed. R. Civ. P. 13(a). In any event, there would be duplicative evidence, and evidence of Brown's medical condition would have to be repeated in the Jones Act proceeding. The Court finds voluntary dismissal improper.

For the foregoing reasons, the Court DENIES the motion to sever and expedite trial, and it DENIES the alternative motion to dismiss the counterclaim.

New Orleans, Louisiana, this __2nd__ day of September, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE